## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE


Kwench Systems
International, LLC

    v.                                           Civil No. 07-cv-221-JM

Uponor Wirsbo Company



## ORDER


    The plaintiff, Kwench Systems International, LLC ("Kwench")
has filed an action for patent infringement against Uponor Wirsbo
Company ("Uponor").  On September 9, 2008, the court conducted a
Markman hearing, at which the parties presented evidence and
argument in support of their respective constructions of the
disputed patent terms.  See Markman v. Westview Instruments,
Inc., 517 U.S. 370 (1996).  In this Order, I construe the
disputed patent terms.


## I.  BACKGROUND

## A.  General Description of the Patented Invention

    The patents-in-suit are U.S. Patent Nos. 6,044,911 (the '911
patent), 6,241,024 (the '024 patent), and 6,422,319 (the '319
patent).  All three patents disclose "[a]n integrated water
distribution network [that] supplies the requirements of both

domestic and fire sprinkler water fixtures in a dwelling

structure." '911 patent, Abstract.[1]

　　Previous sprinkler systems require a large-diameter water

supply main and are "'stagnant' water systems, in that the water

flows within the system only when a sprinkler head is activated."

Id. col. 1:22-24.  These sprinkler systems "require regular

inspections of system operability as it is critical that water

under pressure be supplied to the various sprinkler assemblies."

Id. col. 1:46-48.  On the other hand, domestic water systems

cannot be "stagnant" for a variety of reasons (codes,

regulations, etc.).  Id. col. 1:27-30.  As a result, domestic and

fire-sprinkler water systems have been separate which "is both

uneconomical . . . and environmentally disadvantageous."  Id.

col. 1:38-40.  The applicant's invention overcomes these

shortcomings by integrating a domestic water system with a fire-

sprinkler system.  Id. col. 2:8-11.

**B.  The Claims**

　　The relevant claim language from the three patents-in-suit

is substantially similar.  The parties dispute four patent terms:

plumbing fixture; substantially non-stagnant; integrated; and

backflow diverter-less.  Claim 1, which is representative of the

---

　　[1] For ease of reference, I cite to the '911 patent's
specification where the patents-in-suit are substantively
identical.

independent claims, is reproduced below, with the disputed terms in boldface.

> **1.** An **integrated** water distribution system for supplying both domestic water and fire sprinkler water requirements of a structure, said system comprising:[2]
>
>> a plurality of multiport fittings being adapted to be secured within the structure, each of said plurality of multiport fittings having a plurality of ports, each of said plurality of multiport fittings capable of being fluidly coupled to a fire sprinkler assembly;
>>
>> a plurality of flexible conduit interconnecting said plurality of multiport fittings through said plurality of ports, said plurality of flexible conduit establishing a network, and each of said plurality of flexible conduit within said network being capable of carrying a water flow;
>>
>> a plurality of **plumbing fixtures**, each being fluidly connected to the network through a fixture conduit, wherein upon occupant use of any one or more of said plumbing fixtures, said water flow through each of said flexible conduits interconnecting said plurality of multiport fittings is **substantially non-stagnant**; and
>>
>> a water supply line fluidly coupled to the network, for supplying the system with water relating to the occupant use.

'911 patent, col. 5:7-30.

---

[2] The '319 patent's first independent claim has the same preamble but adds the term "backflow diverter-less," so that it reads: "[a]n integrated **backflow diverter-less** water distribution system. . .." '319 patent, col. 7:38.  The term "backflow diverter-less" is also in dispute.

### C.  Prosecution History

The patents-in-suit are links in a chain of continuation and continuation-in-part applications that began with the first application in 1996.  The '911 patent is a continuation-in-part of U.S. Patent Application 08/904,355, which was a file-wrapper continuation of the applicant's first application, U.S. Patent Application 08/709,121.[3]  The '024 patent is a continuation-in-part of the '911 patent while the '319 patent is a continuation-in-part of the '024 patent.

## II.  CLAIM CONSTRUCTION

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Claim construction is a question of law.  Markman, 517 U.S. at 372.  A claim term must be assigned "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  Phillips, 415 F.3d at 1313.

---

[3] The 08/904,355 and 08/709,121 applications eventually were abandoned.

4

A disputed term should be construed by first examining the intrinsic evidence, which includes the claim language, the specification, and the prosecution history.  Id. at 1314.  The "claims 'must be read in view of the specification, of which they are a part.'"  Id. at 1315 (quoting Markman v. Westview Instruments, 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc)).  Moreover, the specification is usually "'the single best guide to the meaning of a disputed term.'"  Phillips, 415 F.3d at 1314 (quoting Markman, 52 F.3d at 979).  The prosecution history should also be consulted to clarify "how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it otherwise would be."  Id. at 1317.

After examining the intrinsic evidence, courts may also refer to extrinsic evidence such as dictionaries, treatises, and expert testimony when necessary to fully understand the scope of a claim.  Id. at 1317–18.  These sources must be "considered in the context of the intrinsic evidence."  Id. at 1319.  "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention [in the specification] will be, in the end, the correct construction."  Id. at 1316.

### III.  Analysis

**A.  Plumbing Fixtures**

The first dispute focuses on what the patent claims when it uses the term "plumbing fixture."  That term is used in independent claim 1 of the '911 patent, which recites:

> a plurality of plumbing fixtures, each being
>         fluidly connected to the network through a
>         fixture conduit, <u>wherein upon occupant use of
>         any one or more of said plumbing fixtures,
>         said water flow</u> through each of said flexible
>         conduits interconnecting said plurality of
>         multiport fittings <u>is substantially non-stagnant</u>.

'911 patent, col. 5:21-26 (emphasis added).  While the parties agree the claim contemplates that using a plumbing fixture will cause water to flow, they disagree about whether a plumbing fixture must also drain water away.  Kwench argues that a plumbing fixture is "a device connected to the system to deliver and drain away water and configured to enable a particular use." Pl.'s Rebuttal Br. (document no. 30) at 3.  Uponor argues, by contrast, that a plumbing fixture has a much broader construction and means any "component other than a fire sprinkler that receives water from the water supply of the structure," Def.'s Rebuttal Br. (document no. 31) at 3, with no draining away requirement.  I am not persuaded by Kwench's construction, that a plumbing fixture must include a draining capacity, for the following reasons.

        1.  The Specification

    Kwench begins with the specifications to support its
construction of a plumbing fixture to include a draining away
requirement.  Kwench relies heavily on the fact that the
specifications' examples of plumbing fixtures all drain water
away, like the faucet with a sink depicted, and argues that the
court should take judicial notice of this.  See '911 patent, col.
3:4-5 (listing "a water closet **22**[4], tub, vanity sink **24**, or
kitchen sink **26**"); see also Pl.'s Br. at 22-23.  These
illustrations, however, are only examples of plumbing fixtures,
and do not serve to limit the scope of the claims.  See C.R.
Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 865 (Fed. Cir.
2004) ("Under our precedent, a patentee's choice of embodiments
can shed light on the intended scope of the claim, but a patent
claim term is not limited merely because the embodiments in the
specification all contain a particular feature.").  Despite the
embodiments showing a faucet and sink together, nothing in the
specification supports the conclusion that the term "plumbing
fixture" is limited to a faucet and sink as one unit rather than
a faucet alone, nor supports the conclusion that a drain is a
necessary component of a "plumbing fixture."  When, as here, the
applicant has not demonstrated a clear intention to limit the

---

    [4] The bolded numbers cited are from the written description
of the patents and refer to corresponding elements in the
patent's drawings.

                                7

scope of the claims, a restriction cannot be read into them.  <u>See</u>
<u>Liebel-Flarsheim Co. v. Medrad, Inc.</u>, 358 F.3d 898, 906 (Fed.
Cir. 2004).  If Kwench had intended "plumbing fixtures" to be
limited to devices which drain away water, he could and should
have said so in the independent claims, or made that limitation
clear in the specification.  <u>Id.</u> at 908-09.

Next, and in response to Uponer's position that a plumbing
fixture may include a faucet or other outlet which need not be
connected to a drain, Kwench argues that the specification
language describes "plumbing connections or attachments" as,
among other things, valves, rendering "valves and other devices
that simply release water" "entirely distinct" from plumbing
fixtures.[5]  <u>See</u> Pl.'s Rebuttal Br. at 8; Pl.'s Br. at 24.  This
language, however, simply indicates that valves may operate as
plumbing connections or attachments, but it does not suggest, let
alone substantiate, Kwench's position that a valve cannot also be
a plumbing fixture because it does not drain water away.  When

---

[5] The specification language on which Kwench relies
provides, in relevant part:
> Additional plumbing connections or attachments
> such as <u>valves</u>, piping, expansion tanks, pipe
> fittings (elbows, tees, etc.) are all well know
> [sic] in the art of plumbing . . ..  These additional
> components, which may be needed to fully implement
> a functional water distribution system according
> to the present invention, are well known to those
> skilled in the art and are not shown in the
> exemplary environment of FIGS. 1-4.

'024 patent, col. 3:12-22 (emphasis added).

8

that language is read in context, it is clear that the valves
described as plumbing connections or attachments were internal to
the system (e.g., "unidirectional flow valves," '024 patent, col.
3:15), were considered part of the water distribution system, and
were not depicted in Figures 1-4 because they were well known to
people skilled in the art and, therefore, were not necessary to
show.  See id., col. 3:18-21.

    By contrast, the patents depict a faucet and sink in Figures
1-4, which suggests that Kwench considered valves that released
water, like faucets, to be plumbing fixtures that were important
to show, unlike the "plumbing connections or attachments . . .
not shown in the exemplary environment."  Id. col. 3:22.  The
claims also recite that "upon occupant use of any one or more of
said plumbing fixtures" water will flow.  See, e.g., '911 patent,
col. 5:24-25.  Significantly, the claims do not continue on to
state that upon occupant use of said plumbing fixture water will
also drain away.  Because use of a faucet will cause water to
flow, a faucet is reasonably understood to be a type of plumbing
fixture within the scope of the claims.  This construction of
plumbing fixture to include outlet valves, like faucets, is not
precluded by the specification language describing "plumbing
connections or attachments" to include valves.  The term "valve"
is reasonably understood to cover both possibilities.

Simply because valves that are plumbing connections or
attachments do not drain away water, does not mean that valves
that are plumbing fixtures must drain water away.  Nothing in the
specification supports such a limited construction of the term
"plumbing fixture."  The requirement for "occupant use" of the
plumbing fixture, and the depiction of a faucet and a sink,
strongly support a construction of "plumbing fixture" to include
all the component parts that deliver or receive water, which may,
but must not necessarily, also drain water away.

### 2.  The Prosecution History

The prosecution history also undermines Kwench's argument
that a plumbing fixture must drain water away and, therefore,
does not include any valve or other device that simply releases
water.  During prosecution of the 08/709,121 application, the
applicant implied that faucets were plumbing fixtures by
describing his invention as a "distribution network [that]
functions in both ways," where "water continuously flushes
through the pipes <u>whenever a faucet is turned on</u> or a toilet is
flushed."  Def.'s Rebuttal Br., Ex. G at UPR003504 (emphasis
added).  Thus, the applicant understood that a faucet, without a
drain, is sufficient to make water flow through the system.

### 3.  Extrinsic Evidence

Finally, Kwench cites several dictionary definitions to
support the proposition that a plumbing fixture drains water

10

away.  See Pl.'s Br. at 23 (citing DICTIONARY OF SCIENTIFIC AND

TECHNICAL TERMS (McGraw Hill, 4th ed. 1989), and Int'l Ass'n of

Plumbing & Mechanical Officials, Unif. Plumbing Code, Ch. 2,

202.0 (1994)).  The term "plumbing fixture," however, has several

dictionary definitions, including ones that comport with Uponor's

proposed construction.  See Def.'s Rebuttal Br. at 3 (citing

A.S.S.E. Plumbing Dictionary).  In fact, the Uniform Plumbing

Code, which Kwench proffers as support for its construction,

includes an alternative definition in line with Uponor's

construction.  See Pl.'s Br. at 23 (citing Unif. Plumbing Code,

Ch. 2, 202.0 (1994)); see also Pl.'s Rebuttal Br. at 7 (citing

Int'l Code Council, Int'l Plumbing Code (2006), which defines

plumbing fixture to include, alternatively, a receptacle that

demands water, or a device that discharges water, or requires

both a water supply connection and a discharge (emphasis added)).

This extrinsic evidence demonstrates that a plumbing fixture does

not necessarily need to drain water away.[6]

    As the above discussion demonstrates, Kwench's construction

of the term plumbing fixture is not supported by either the

intrinsic or the extrinsic evidence on which it relies.

Accordingly, I adopt Uponor's construction, that a "plumbing

---

    [6]Kwench also argues that a plumbing fixture should be
limited by the clause "configured to enable a particular use."
Nothing in the record supports this construction, and Kwench's
reliance on extrinsic evidence is both unpersuasive and
insufficient, requiring no further analysis.

fixture" is a component of a water system other than a fire
sprinkler that receives water from the water supply of the
structure.

**B.  Substantially Non-Stagnant**

The parties also dispute to what extent the patents-in-suit
contemplated water would flow in the system when a plumbing
fixture is used.  Independent claim 1 of the '911 patent recites:

> said water flow through each of said flexible
> conduits interconnecting said plurality
> of multiport fittings is substantially
> non-stagnant.

'911 patent, col. 5:24-26.  Kwench argues that the word
substantially was chosen to convey that, when a plumbing fixture
is used, "water movement results in many of the water carrying
conduits, but not all of the conduits."  Pl.'s Rebuttal Br. at 3-
4.  On the other hand, Uponor contends that "water must flow
'throughout <u>essentially the entire</u> system.'"[7]  Def.'s Rebuttal
Br. at 6.  The issue, therefore, is what the patents claim by the
term "substantially."

Unfortunately, the claim itself is ambiguous, because it
fails to suggest how much deviation from complete non-stagnancy
is acceptable.  Similarly, the specification provides little

---

[7] Uponor originally proposed that use of a plumbing fixture
"will cause water to flow throughout the system" but later
revised its definition to add the modifier "essentially."  Def.'s
Opening Br. (document no. 26) at 4.

guidance for a more precise construction of "substantially."
Instead, the written description uses the modifiers "generally"
or "essentially" to describe the resultant water flow from use of
a plumbing fixture.  See, e.g., '911 patent, col. 1:61-62 ("a
water flow is established throughout generally the entire network
each time a plumbing fixture is accessed"); id. col. 4:19-21 ("by
establishing water flow within essentially the entire system **10**
during occupant use of a plumbing fixture").  The specification
explains that "[w]hile the flow rates of individual conduits **16,
18** may not be equal (and may be in directions other than as
illustrated) there is some flow of water in the conduits **16, 18**
between all of the multiport fittings during sink **26** use."  '911
patent, col. 4:28-32.  While the patents-in-suit convey that upon
use of a plumbing fixture water will flow through some portion of
the system, how much of the system is not clearly or definitely
described.  The fact that the claims are silent about the exact
extent of water flow suggests that the ordinary and accustomed
meaning of "substantially" should be adopted.

Uponor argues, however, that the file history limits Kwench
to water flow "throughout" the network.  Def.'s Opening Br. at
14-15.  To support this position, Uponor cites the appeal brief
filed during the prosecution of the '911 patent, in which the
applicant repeatedly argued that, upon use of a plumbing fixture,
there is non-stagnancy throughout the system.  See Def.'s Opening

13

Br., Ex. D at 15–16 ("in the present invention, upon use of a
plumbing fixture **20** [sic], **24, 26** a non-stagnant water condition
is established <u>throughout</u> the network **10** and not only in the
local conduit **16, 18** and local multiport fitting **14**.").  Uponor
now asserts that the patent intended that water flow "throughout
the system" means "system-wide, non-stagnant water flow."  Def.'s
Rebuttal Br. at 5.  Yet, Uponor also concedes that this language
does not require water to flow through every inch of conduit.
<u>Id.</u>  This position is actually consistent with Kwench's argument,
that the applicant's statements do not limit the claims to
require water to flow through every inch of conduit.  Pl.'s
Rebuttal Br. at 6–7; Def.'s Rebuttal Br. at 5.  I agree that to
construe the term "substantially" otherwise would create the
nonsensical result of reading "substantially" out of the claims.
<u>See</u> <u>Bicon, Inc. v. Straumann Co.</u>, 441 F.3d 945, 950 (Fed. Cir.
2006) ("claims are interpreted with an eye toward giving effect
to all terms in the claim"); <u>see also</u> <u>Innova/Pure Water</u>, 381 F.3d
at 1119 ("While not an absolute rule, all claim terms are
presumed to have meaning in a claim").  The prosecution history,
therefore, also fails to definitively commit to how much of the
system the applicant claimed water would flow through upon use of
a plumbing fixture.

While the parties agree that the patents claim that water
flow upon use of a plumbing fixture means something less than

100% of the entire system, i.e., the claim is not limited to
complete non-stagnancy, it is clear that Kwench's proposed
construction, that water need only flow through "many" of the
conduits, may understate the resultant water flow.  Since neither
the claim itself, nor the prosecution history indicate an intent
to limit the word substantially, I conclude that the ordinary and
accustomed meaning of the term should be adopted, because the
intrinsic evidence does not suggest a narrower interpretation.
See Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1387–
88 (Fed. Cir. 1992).  I find the patents claim that, upon use of
a plumbing fixture, water flows largely, but not necessarily
wholly, throughout the system.  This construction comports with
other cases that have interpreted the term "susbtantially" and
follows the applicable rules of claim construction.  See LNP
Eng'g Plastics, Inc. v. Miller Waste Mills, Inc., 275 F.3d 1347,
1354 (Fed. Cir. 2001) ("the claim language supports . . . the
district court's interpretation of substantially completely
wetted as largely, but not necessarily wholly, surrounded by
resin.") (internal quotations omitted)); see also Ecolab, Inc. v.
Envirochem, Inc., 264 F.3d 1358, 1369 (Fed. Cir. 2001) (defining
substantially as "largely but not wholly").

## C.  Integrated

The third disputed term is the word "integrated," as used in
the preamble of each independent claim.  The parties disagree as

15

to whether the term limits the claims or simply gives context for
what is being described in the body of the claims.  The preamble
to claim 1 of the '911 patent is representative and provides:

> An integrated water distribution system
> for supplying both domestic water and fire
> sprinkler water requirements of a structure,
> said system comprising:

'911 patent, col. 5:8-10.  Uponor argues that the preamble
language does not limit the claims, because the claim's body
defines a structurally complete invention.  Uponor states that
"an integrated water distribution system" is fully described by
the claim requirements of "1) a water supply line; 2) a fire
sprinkler somehow connected to that water supply line; and 3) a
plumbing fixture somehow connected to that water supply line."
Def.'s Opening Br. at 11.  It contends that reading the term
integrated into the claims adds nothing.  I disagree.

"Whether to treat a preamble as a limitation is a
determination resolved only on review of the entire[ ] . . .
patent to gain an understanding of what the inventors actually
invented and intended to encompass by the claim."  Poly-America,
L.P. v. GSE Lining Tech., Inc., 383 F.3d 1303, 1309 (Fed. Cir.
2004) (internal quotes omitted).  A preamble will generally limit
claim scope if it "recites essential structure or steps, or if it
is necessary to give life, meaning, and vitality to the claim."
NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1305 (Fed.
Cir. 2005) (quoting Catalina Mktg Int'l v. Coolsavings.com, Inc.,

289 F.3d 801, 808 (Fed. Cir. 2002)).  Furthermore, "[w]hen limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention."  Eaton Corp. v. Rockwell Int'l Corp., 323 F.3d 1332, 1339 (Fed. Cir. 2003).  In contrast, a term used in a preamble will not limit the claim if it "merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention." IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1434 (Fed. Cir. 2000).

Based on my review of the patents-in-suit, it is clear that the use of the term integrated in the preamble was intended to modify all the claims.  For example, independent claim 1 of the '911 patent, only requires that the multiport fittings are "capable of being fluidly coupled to a fire sprinkler assembly." '911 patent, col. 5:14-15 (emphasis added).  If Uponor were correct that "integrated" is merely contextual and not limiting, then the claim would read on every domestic water system with multiport fittings, even if the systems were not combined with a sprinkler system.[8]  This outcome contradicts a plain reading of the patent.

---

[8] I assume, arguendo, that a sprinkler system could be connected to the hypothetical infringing domestic water system through multiport fittings.

Several other independent claims similarly reveal how Uponor's argument fails.  For example, independent claims 6 and 16 of the '911 patent call for the multiport fittings to be "fluidly coupled to an associated fire sprinkler assembly."  <u>Id.</u> col. 5:51–52; <u>id.</u> col. 6:32–33 ("each multiport fitting being fluidly coupled to a fire sprinkler assembly").  These claims read on a system "where the water supply for the plumbing fixtures and fire sprinkler heads originate from an [sic] single water source . . . but then branch off into separate and distinct systems that do not reconnect at any further point."  Pl.'s Br. at 28.  In other words, if "integrated" is not a limitation, the claim would read on previously existing systems, even though the patents' advantages are only achieved through a combined system. <u>See</u> '911 patent col. 1:19–50 (describing prior art fire sprinkler systems that were separate and distinct from domestic water systems); <u>id.</u> cols. 1:51–64 (discussing the advantages of an integrated domestic water and fire sprinkler system).

Additional support that the preamble's use of the term "integrated" must be read to modify the claim is found in the specification, which states that "[t]he present invention is <u>directed to an integrated water distribution system</u> for supplying a building's domestic water needs and fire sprinkler systems requirements <u>without the duplicity of having separate water distribution networks</u>."  <u>Id.</u> col. 2:8–11 (emphasis added).

18

As the above examples demonstrate, "integrated" does not merely define a context in which the invention operates, "but instead [is] the <u>raison d'etre</u> of the claimed [apparatus] itself." <u>Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.</u>, 320 F.3d 1339, 1345 (Fed. Cir. 2003).  To read out "integrated" would ignore "what the inventors actually invented and intended to encompass by the claim." <u>Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.</u>, 868 F.2d 1251, 1257 (Fed. Cir. 1989).  Therefore, I find that "integrated" limits the claims to a unitary system.

### D.  Backflow Diverter-less

The last disputed term is "backflow diverter-less," which is also found in the preamble.  The preamble to claim 1 of the '319 patent recites:

> An integrated backflow diverter-less water
> distribution system for supplying both domestic
> water and fire protection system water requirements
> of a structure, said distribution system comprising:

'319 patent, col. 7:38-41.  Kwench argues that "backflow diverter-less" limits the claims, because "[c]onventional domestic water system [sic] often include backflow diverters to direct water flow in a single direction as it enters the structure from a water supply . . ..  A distinguishing feature of several claims in the '319 patent is that the system eliminates the backflow diverter."  Pl.'s Br. at 29.

Kwench is not able to provide any evidence to support its position.  There is nothing in the prosecution history to suggest that the lack of a backflow-diverter distinguished the invention from prior art.  See Catalina Mktg., 289 F.3d at 808 ("[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention.").  The term "backflow diverter" also does not appear anywhere in the specifications of the patents-in-suit.  See id. at 808 ("[W]hen reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation.").  Accordingly, "backflow diverter-less" does not limit the claims, but rather, the term provides context for the limitations set forth in the body of the claim.

## IV.  Conclusion

For the reasons set forth above, I construe the disputed terms as follows:

> (1) a "plumbing fixture" is a component of a water system other than a fire sprinkler that receives water from the water supply of the structure;
>
> (2) "substantially non-stagnant" means that upon use of a plumbing fixture, water flows largely, but not necessarily wholly, throughout the system;

20

(3) "integrated" limits the claims to a
    unitary system; and

(4) "backflow diverter-less" is not a claim
    limitation, but simply adds context for
    the limitations in the body of the claims.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge



Date:  November 5, 2008

cc:    Jonathan M. Shirley, Esq.
       Alexander J. Walker, Jr., Esq.
       David D. Christensen, Esq.
       Michael E. Zeliger, Esq.
       David Simons, Esq.
       Jackson Ho, Esq.